IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-01774-PAB

SHELLY M. LAWTON,

       Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

       Defendant.

---

## ORDER

---

    This matter is before the Court on plaintiff Shelly M. Lawton's complaint [Docket No. 1], filed on July 5, 2013.  Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1]  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I.  BACKGROUND

    On May 24, 2010, plaintiff applied for disability benefits under Title II of the Act. R. at 12.  Plaintiff alleged that she had been disabled since June 16, 2008.  *Id*.  After an initial administrative denial of her claim, plaintiff appeared at a hearing before an Administrative Law Judge ("ALJ") on October 17, 2011.  *Id*.  On October 31, 2011, the

---

[1]The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

ALJ issued a decision denying plaintiff's claim.  *Id*. at 20.

The ALJ found that plaintiff had the severe impairments of "degenerative disc disease of the lumbar spine and cervical spine" and post-traumatic stress disorder.  R. at 14.  The ALJ found that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, *id*. at 15-16, and ruled that plaintiff had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except the claimant is limited to unskilled fairly repetitive work with limited contact with the public and supervisors.  The claimant also should not engage in climbing or balancing.  She should not be exposed to workplace hazards.  The claimant can occasionally work overhead and only occasionally perform push/pull type work. The claimant is also otherwise limited to occasional postural activities."  *Id.* at 16. Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  R. at 19.

The Appeals Council denied plaintiff's request for review of this denial.  R. at 1. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II.  ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse

an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

3

exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step

sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R.

§ 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the

evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R.

§ 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of*

*Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of

establishing a prima facie case of disability under steps one, two, and four, the burden

shifts to the Commissioner to show the claimant has the residual functional capacity

(RFC) to perform other work in the national economy in view of her age, education, and

work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005);

*see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the

initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform

himself about facts relevant to his decision and to learn the claimant's own version of

those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

**C.  The ALJ's Decision**

Plaintiff argues that the ALJ erred by (1) failing to include limitations related to all of plaintiff's impairments in her RFC determination; (2) failing to call a medical expert to opine on the issue of whether plaintiff's symptoms medically equaled a listing; (3) concluding that 500 jobs in the state of Colorado and 40,000 jobs nationally was a "significant number" of available jobs; (4) not considering the "borderline age" rules and failing to apply the appropriate rule under the Medical-Vocational Guidelines (the "grids"); and (5) finding that plaintiff was not credible without substantial evidence.  *See* Docket No. 13.

The relevant evidence of record is as follows.  Plaintiff was born on November 15, 1961.  R. at 19.  Plaintiff was injured in an automobile accident on June 16, 2008.  R. at 382.  An examination of plaintiff's spine revealed "[e]arly anterior osteophyte formation" consistent with "degenerative changes."  *Id.* at 352.[2]  Examiners found no acute injury to plaintiff's pelvis, *id.* at 353, but noted moderate facet degeneration at L4-5 and L5-S1 and degeneration of the L5-S1 disc with a "vacuum phenomena."  *Id.* at 354.  After the automobile accident, plaintiff was treated with pain medications, including Flexeril, Naprosyn and ranitidine, and underwent numerous chiropractic and massage therapy treatments.  *Id.* at 279-80.

In September 2008, plaintiff saw Dr. Kathy McCranie for a physiatric pain management consultation.  R. at 279.  Plaintiff complained that she suffered from headaches which occurred daily and lasted all day, causing nausea and vomiting, as

---

[2]An "osteophyte" is "[a] bony outgrowth or protuberance."  Stedman's Medical Dictionary osteophyte (27th ed. 2000).

well as pain "across [her] entire back and down to the hip which is aching in nature." *Id.*

at 280.  Plaintiff also complained of "tingling" in her arms, pain in her forearms,

numbness in both her hands, four bouts of vertigo, abdominal pain, and leakage of the

bladder. *Id.* at 280-82.  Dr. McCranie recommended additional diagnostic studies and

physical therapy. *Id.* at 283.  After an MRI conducted in October 2008 showed

degenerative changes, *id.* at 422, plaintiff informed Dr. McCranie that she was not

interested in considering spinal injections. *Id.* at 296.  Dr. McCranie recommended

continuing physical therapy and massage therapy. *Id.*  Plaintiff continued with physical

therapy through at least May 2009, *id.* at 286, and continued to work with restrictions

until mid-September, 2009, when she was terminated from her employment for reasons

unrelated to her impairments. *See id.* at 343.

In October 2009, plaintiff began treatment with Dr. Perry Haney, a spine

specialist. R. at 321.  In his initial evaluation of plaintiff, Dr. Haney noted that plaintiff's

range of motion in her neck was decreased by about 25 per cent. *Id.* at 323.  X-rays

showed mild degenerative changes in plaintiff's upper and middle back, and moderate

to advanced degenerative changes in plaintiff's lower back. *Id.* at 320.  Dr. Haney

recommended rehabilitation, provided plaintiff with a traction device, and recommended

a follow-up visit with a urologist to determine the cause of plaintiff's incontinence. *Id.* at

325-26.

In May 2010, Dr. Haney performed a lumbar discography procedure. R. at 306.

A CT scan of plaintiff's spine after the procedure showed "mild degenerative changes."

*Id.* at 298.  At a November 2010 visit, Dr. Haney opined that plaintiff had "likely reached

maximum medical improvement/therapeutic benefit from any ongoing scheduled passive or supervised intervention," but that plaintiff should be evaluated by a surgeon. *Id.* at 736.  Dr. Haney further noted that plaintiff would require assistance for lifting, pushing, pulling, or carrying more than 10 pounds occasionally.  *Id.*

In February 2011, plaintiff sought a neurosurgical consultation with Dr. Chad Prusmack.  R. at 789.  Dr. Prusmack observed that plaintiff was able to ambulate and get onto the examination table without assistance, that plaintiff had diminished bicep and lower extremity strength, and that plaintiff had moderate degenerative disc disease at L5-S1.  *Id.* at 790-91.  Plaintiff denied any bladder dysfunction at this examination.  *Id.* at 789.  Dr. Prusmack also noted that plaintiff had a "multitude of neurologic symptoms that do not seem to follow a clear pattern."  *Id.* at 792.

### 1.  Considering All Impairments In Determining RFC

Plaintiff argues that the ALJ erred in failing to consider the effect of her urinary incontinence on her RFC.  Docket No. 13 at 11-12.  The ALJ did not list urinary incontinence as a severe impairment.  When a claimant has a severe impairment that does not meet or equal one of the impairments listed in the Social Security regulations, an ALJ must consider "the limiting effects of all" the claimant's impairments, "even those that are not severe," in formulating an RFC.  20 C.F.R. § 404.1545(e); *see also* SSR 96-8p, 1996 WL 374184 at *5 (July 2, 1996) ("While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may – when considered with limitations or restrictions due to other impairments – be critical to the outcome of a claim.").  "The record must demonstrate

that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

The Commissioner argues that plaintiff repeatedly told her medical providers that her incontinence was caused by her back pain, and the ALJ did not err because he did not find plaintiff's complaints about that pain to be fully credible.  Docket No. 14 at 18. The Commissioner further argues that there was no medical evidence supporting the claimed incontinence and no finding in plaintiff's MRI that would cause such a symptom.  *Id.*  Finally, the Commissioner notes that plaintiff denied any bladder dysfunction during her neurosurgical consultation.  *Id.*  The ALJ, however, did not raise any of these arguments as a reason to discount plaintiff's complaints of urinary incontinence.  In fact, the ALJ did not discuss plaintiff's incontinence at all.  The Court is not permitted to adopt the Commissioner's post hoc rationale for the ALJ's RFC finding. *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) ("Judicial review is limited to the reasons stated in the ALJ's decision").  The Court finds that the ALJ erred in failing to discuss plaintiff's complaints of urinary incontinence in determining plaintiff's RFC. Plaintiff repeatedly reported urinary incontinence to her medical providers.[3]  At a minimum, the ALJ was required to consider the effect of plaintiff's claimed impairment

_____

[3]*See* R. at 282 (noting that plaintiff complained of "some leakage of the bladder"); 285 ("continued reports of urinary incontinence"); 286 ("stress incontinence"); 291 ("some urinary incontinence with coughing and sneezing"); 302 ("continues to complain of loss of bladder control"); 326 ("occasional bladder incontinence"); 500 ("she has had some urinary incontinence"); 609 ("she states that she also has some urinary incontinence with coughing and sneezing"); 775 ("the patient does have stress incontinence, which is new following the motor vehicle injury"); 796 ("loss of bladder control"); 811 ("loss of control of her bladder causing her to urinate without control at any time of the day and night").

on her RFC.  Because the record does not reflect that the ALJ considered this
impairment, remand is appropriate.  *See Clifton*, 79 F.3d at 1009-10.

### 2. Consideration of Plaintiff's Borderline Age

Plaintiff argues that the ALJ erred by applying the grids' age categories
mechanically since plaintiff was only fifteen days from her fiftieth birthday at the time the
ALJ reached her decision.  Docket No.13 at 19.  Plaintiff claims that applying the higher
age category may have resulted in a finding that plaintiff was disabled.  *Id.*  The Court
will address this issue as it may be relevant on remand.

The grids divide claimants into one of four age categories: (1) "younger
individual, ages 18-44," (2) "younger individual, ages 45-49," (3) "closely approaching
advanced age," ages 50-54, and (4) "advanced age," ages 55 and above.  20 C.F.R. Pt.
404, Subpt. P, App. 2.  These age categories impact the finding of whether an applicant
is disabled or not disabled because they approximate an individual's ability to adapt to a
new work environment.  *See id.*  However, to alleviate some of the arbitrariness in
application of the age categories, 20 C.F.R. § 404.1563(b) states that the agency "will
not apply the age categories mechanically in a borderline situation.  If you are within a
few days to a few months of reaching an older age category, and using the older age
category would result in a determination or decision that you are disabled, we will
consider whether to use the older age category after evaluating the overall impact of all
the factors of your case."  In such a "borderline situation," the ALJ "must determine
based on whatever evidence is available which of the categories on either side of the
borderline best describes the claimant."  *Daniels v. Apfel*, 154 F.3d 1129, 1136 (10th

Cir. 1998).  Once the ALJ has done so, she may apply the grid guidelines using the age category she determined was most appropriate.  *Id.*

Here, the ALJ considered plaintiff to be in the "younger individual, age 45-49" category based on plaintiff's age as of the alleged onset date.  R. at 19.  Had the ALJ applied the category of "closely approaching advanced age," the grids may have directed a finding that plaintiff was disabled.  Under grid rule 201.14, an individual who is (a) limited to sedentary work, (b) closely approaching advanced age with a high school degree or higher, (c) whose education does not provide for direct entry into skilled work, and (d) whose past work history is skilled or semiskilled, but does not confer transferrable skills is considered disabled under the grids.  20 C.F.R. Pt. 404, Subpt. P, App. 2.

The Commissioner argues that the ALJ must have taken plaintiff's borderline status into account since she mentioned her birth date in her decision, Docket No. 14 at 21, and that, even if the ALJ had considered plaintiff to be in the category of "closely approaching advanced age," plaintiff could not be found disabled because there is no evidence regarding whether plaintiff has any skills from her past work.  *Id.* at 22.  The Commissioner confuses the parties' respective burdens.  "Application of [the appropriate age category] is a step-five issue, and the burden generally is on the Commissioner at step five."  *Daniels*, 154 F.3d at 1134.  Thus, the lack of evidence as to whether plaintiff's prior work gave her transferrable skills suggests both that the ALJ's finding was not based on substantial evidence, and that the ALJ neglected to consider whether to place plaintiff in the category of "closely approaching advanced age."  The Court cannot infer from the ALJ's mention of plaintiff's birthday that the ALJ properly

10

considered whether plaintiff's case was a borderline situation.  On remand, the ALJ can make such a determination.

The ALJ's reconsideration of the full range of plaintiff's impairments will provide the ALJ with the opportunity to reassess the totality of evidence supporting plaintiff's RFC.  Therefore, the Court will not address plaintiff's remaining arguments.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand").

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the October 31, 2011 decision of the Commissioner that plaintiff was not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

DATED March 30, 2015.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge